

# SUPREME COURT OF ARKANSAS

**No.** CV–14–612

| | |
|---|---|
| TONIA INGLE<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br><br>APPELLEE | **Opinion Delivered** November 13, 2014<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. JV12-387-3]<br><br>HONORABLE STACEY<br>ZIMMERMAN, JUDGE<br><br>AFFIRMED. |

## COURTNEY HUDSON GOODSON, Associate Justice

Appellant Tonia Ingle appeals the order entered by the Washington County Circuit Court awarding permanent custody of her son C.N. to his father, Jason Neal. For reversal, Ingle contends that the circuit court failed to abide by this court's mandate issued in the previous appeal; that the proceedings were not conducted in accordance with the Arkansas Juvenile Code; and that the circuit court's decision is not supported by the evidence. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(7), as this is a second or subsequent appeal following an appeal that has been decided by this court. We affirm the circuit court's decision.

The record reflects that this case began in May 2012 when appellee, the Arkansas Department of Human Services (DHS), obtained an emergency order for custody of C.N. upon Ingle's arrest on drug-related charges. At the probable-cause hearing, the circuit court

SLIP OPINION

placed C.N. in Neal's temporary custody. The circuit court subsequently declared that C.N. was dependent-neglected, and the court continued the placement of the child in Neal's custody. At the six-month review hearing, the circuit court abruptly awarded Neal permanent custody of C.N. and closed the case. Ingle appealed to the court of appeals, which affirmed the circuit court's decision. *Ingle v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 418. This court accepted Ingle's petition for review, and we reversed and remanded, directing the circuit court to return C.N. to Ingle's custody. *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, 431 S.W.3d 303. In so holding, we stated the following:

> Of course, this court cannot know what has transpired since the circuit court entered its order vesting custody in Neal. If facts have developed during the pendency of the appeal that would cause serious concern about returning C.N. to Ingle's care, any party may file a petition requesting the circuit court to address those matters.

*Id.* at 9, 431 S.W.3d at 308.

The clerk of this court issued the mandate on February 19, 2014. On February 28, 2014, DHS filed a petition requesting an emergency hearing. In reference to the above-quoted language from this court's opinion in *Ingle*, DHS asserted that issues of grave concern had arisen during the pendency of the appeal. Specifically, DHS alleged that Ingle had been charged with six felony offenses and that she had given notice that she was asserting the defense of mental disease or defect to those charges. The circuit court set a hearing for March 12, 2014, but the court entered an order continuing the matter until April 16, 2014, due to DHS's inability to locate Neal.

At the hearing, DHS presented the testimony of Nirika Morris, the Washington

County supervisor for the Department of Children and Family Services. Morris had recently visited Neal's home, and she testified that it was clean and appropriate for C.N.'s needs. She had observed C.N. at play in his bedroom and said that C.N. appeared to be comfortable and at home in Neal's care. Morris also stated that C.N. interacted well with the other children in the home and that C.N. was particularly close to his stepbrother. Morris testified that Ingle's visitation with C.N. had been infrequent and irregular since the last custody order. She said that Ingle had given birth to a son during the pendency of the case and that Ingle no longer had custody of that child. Morris expressed concerns about C.N.'s health and safety should he be returned to Ingle's custody. She recommended that C.N. remain in Neal's care.

DHS also introduced into evidence the felony informations charging Ingle with possession of a controlled substance (hydrocodone), filed on April 4, 2013; possession of a controlled substance (methamphetamine), possession of drug paraphernalia (glass pipe), and aggravated robbery (based on the allegation that Ingle brandished a BB gun in order to steal a wallet), filed on June 13, 2013; and possession of a controlled substance (methamphetamine), and furnishing a prohibited article into a correctional facility (methamphetamine), filed on February 21, 2013. The circuit court also allowed the admission of an "Order for Fitness to Proceed," suspending the criminal proceedings regarding the charges filed on April 4 and June 13, 2013, because Ingle had given notice that she intended to assert the defense of mental disease or defect. DHS also introduced an order setting those charges for trial on April 28, 2014.

Neal also testified at the hearing. He stated that C.N. had been living with him for

almost two years and that the child had adjusted well to the arrangement. Neal said that, in addition to C.N., his household included his wife, their one-year-old daughter, and his wife's son, who was roughly the same age as C.N. He testified that the boys were best friends. Neal further testified that substantial time periods would pass when he did not hear from Ingle and that she had exercised visitation with C.N. only five times in the past eighteen months. Neal stated that his desire was for C.N. to remain in his custody. He said that he had concerns about Ingle with regard to her lifestyle, which included drugs and "partying."

In her testimony, Ingle stated that there were no serious concerns about C.N. being returned to her custody. She testified that she worked full-time as a supervisor and that she was involved in her church. Ingle denied that she used drugs and said that she had passed a drug test at the March 12, 2013 hearing that had been continued. She acknowledged that she had visited C.N. only five or six times since November 2012. Ingle stated, however, that Neal did not always respond to her text messages, that his phone was sometimes turned off, and that he had no voice mail. She also said that Neal had moved without her knowledge. As another reason for not exercising visitation, Ingle testified that, due to his advanced age, her father could no longer supervise visitation with C.N., as ordered by the circuit court. She also stated that she frequently visited her other son, who had been placed in foster care after her arrest on the aggravated-robbery charge.

In addition, Ingle testified that the charges pending against her were being dismissed. She maintained that one possession-of-methamphetamine charge was false because the substance the officers discovered was acrylic and not methamphetamine. With regard to the

4

other charge of possession of methamphetamine and furnishing a prohibited article, Ingle claimed that the substance was placed in her belongings by another inmate in the jail. She also denied that she robbed anyone.

In its ruling from the bench, the circuit court expressed serious concerns about placing C.N. in Ingle's custody. The court found that Ingle had been arrested twice in the past year. The court also considered the serious charges pending against Ingle and the fact that she was asserting the defense of mental disease or defect. The circuit court also noted that Ingle's other child had been removed from her custody following her arrest. The court found that placing C.N. in Ingle's care was not safe and would put the child in harm's way and that it would be detrimental to the child to remove him from Neal's home where he was doing well. The circuit court incorporated its findings in an order dated April 18, 2014, and an amended order entered on April 28, 2014. This timely appeal followed.

Ingle's first argument for reversal is that the circuit court violated the mandate of this court issued in the prior appeal. She contends that the mandate required the immediate return of C.N. to her custody and that the circuit court exceeded its authority by entertaining DHS's petition and conducting the hearing. DHS responds that the circuit court's actions were appropriate and complied with this court's directives because our instructions on remand invited the filing of a petition to address serious concerns before custody was returned to Ingle.

The mandate is the official notice of action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower

court to have the appellate court's judgment duly recognized, obeyed, and executed. *Johnson v. Cincinnati Ins. Co.*, 375 Ark. 164, 289 S.W.3d 407 (2008). We have long held that the inferior court, upon remand, must execute the mandate. *Wal-Mart Stores, Inc. v. Regions Bank Trust Dep't*, 356 Ark. 494, 156 S.W.3d 249 (2004). Under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Dolphin v. Wilson*, 335 Ark. 113, 118, 983 S.W.2d 113, 115 (1998). Thus, a lower court is bound by the judgment or decree of a higher court as law of the case and must carry the decision of the higher court into execution pursuant to the mandate issued by that court. *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 366 Ark. 463, 237 S.W.3d 20 (2006). The lower court may not vary the decision or judicially examine it for any purpose other than execution. *Smith v. AJ & K Operating Co.*, 365 Ark. 229, 227 S.W.3d 899 (2006).

We have also observed that the "lower court is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate." *City of Dover v. Barton*, 342 Ark. 521, 525, 29 S.W.3d 698, 700 (2000) (quoting *Dolphin*, 335 Ark. at 118, 983 S.W.2d at 115). Therefore, the question of whether the lower court followed the mandate is not simply one of whether the lower court was correct in its construction of the case, but also involves a question of the lower court's jurisdiction. *Id.* at 118–19, 983 S.W.2d at 115. Similarly, when a case is remanded for a specific act, the entire case is not reopened, but rather the lower tribunal is only authorized to carry out the appellate court's mandate, and the trial court may be powerless to undertake any proceedings beyond those specified. *Id.* If an appellate court remands with specific instructions, those instructions must be followed exactly,

to ensure that the lower court's decision is in accord with that of the appellate court. *Id.*

In the previous appeal, this court found fault with the circuit court's decision to grant permanent custody to Neal. In the opinion, we reversed the circuit court's decision and remanded with a qualified instruction for the court to return custody of the child to Ingle. This directive was qualified in that the opinion included the caveat that any party was authorized to file a petition to alert the circuit court of any "serious concerns" that should be addressed before returning the child to Ingle's custody. Therefore, when this court issued the mandate and remanded the case, the circuit court was vested with jurisdiction to either enter an order placing custody of the child with Ingle or to entertain a petition to address matters of serious concern that had occurred during the pendency of the appeal. Clearly, we gave the circuit court leave to evaluate the return of the child to Ingle's custody based on events that transpired during the appeal. Pursuant to this qualification, DHS filed such a petition, and the circuit court addressed those matters at the hearing. In our view, the circuit court followed both the letter and the spirit of the mandate on remand. Therefore, we find no merit in Ingle's contention that the circuit court violated the mandate of this court on remand.

Ingle's next argument on appeal is that the proceedings were not conducted in accordance with the juvenile code. This point is built on her first argument that the circuit court was only authorized by the mandate to place the child in her care. Ingle insists that, once C.N. was returned to her custody as required by the mandate, the only manner by which DHS could have removed C.N. from her home would have been for it to initiate an entirely new case by filing an emergency petition and establishing probable cause that C.N.

was dependent-neglected and in immediate danger of harm. She contends that the circuit court failed to implement the proper procedures under the code. In response, DHS asserts that Ingle failed to preserve this argument for appeal because it was not raised in the circuit court.

Our review of the record confirms DHS's contention. At no point in the proceedings below did Ingle argue that DHS was required to initiate a new petition and to establish probable cause for the child's immediate removal from her custody. As we stated in the first appeal of this matter, "a contemporaneous objection is required in order to preserve an issue for appeal." *Ingle*, 2014 Ark. 53, at 7, 431 S.W.3d at 307. Because this issue is being raised for the first time on appeal, we do not address it.

As her final point on appeal, Ingle asserts that the circuit court's findings are not supported by the evidence. DHS responds that the evidence demonstrates that there were serious concerns about returning the child to Ingle's custody. This court reviews findings in dependency-neglect proceedings de novo, but we will not reverse the trial court's findings unless they are clearly erroneous. *Contreras v. Ark. Dep't of Human Servs.*, 2014 Ark. 51, 431 S.W.3d 297. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Young v. Ark. Dep't of Human Servs.*, 2012 Ark. 334. This court does give a high deference to the circuit court because that court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Seago v. Ark. Dep't of Human Servs.*, 2011 Ark. 184, 380 S.W.3d 894.

SLIP OPINION

In this case, the circuit court heard testimony that Ingle had been arrested twice since the entry of the last order, which had resulted in the removal of another child from her custody. She was facing a multitude of criminal charges and had asserted the defense of mental disease or defect. Although Ingle maintained that she was not guilty of any offense, the circuit court was not required to believe her testimony. Ingle also claimed that the charges against her were to be dismissed. However, she offered no proof to support that assertion, which again the circuit court was not obliged to accept. By her own admission, Ingle had seen C.N. only a handful of times in the past eighteen months. Otherwise, there was testimony that C.N. was faring well in Neal's custody and that he was bonded to his half–sibling and stepbrother. On this record, we are not able to say that the circuit court's decision is clearly erroneous.

Affirmed.

HART, J., concurs.

HANNAH, C.J., and CORBIN and DANIELSON, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, concurring.** I write separately in response to the dissent. Apparently the sole premise on which the dissent is based is that the circuit court lacked subject-matter jurisdiction to entertain the current petition filed by ADHS following our opinion in *Ingle I* reversing and remanding the circuit court's decision to award permanent custody to Neal, the putative father, and close the dependency-neglect case. However, this dissent's focus on jurisdiction reveals a misunderstanding of the ongoing nature of dependency-neglect proceedings.

In *Ingle I*, we did not direct the circuit court to close the dependency-neglect case. The circuit court had clearly erred in closing the case in contravention of the dictates of the juvenile code. While Ingle had been compliant with the case plan, she had not completed all of the requirements, which indicated that further court supervision was necessary.

We held that, "we are left with a definite and firm conviction that a mistake was committed when the circuit court found that it was in C.N.'s best interest to be placed in the permanent custody of Neal." Thus, our opinion not only reversed the order granting custody to Neal but reversed the order closing the case. Clearly, we did not direct the circuit court to close the dependency neglect proceedings. In fact, we anticipated that the case would continue in accordance with the juvenile code and said specifically that, "[i]f facts have developed during the pendency of the appeal that would cause serious concern about returning C.N. to Ingle's care, any party may file a petition requesting the circuit court to address those matters."

In *Ingle I* we noted:

> Ingle first argues on appeal that the circuit court's disposition of halting reunification services, placing C.N. in Neal's permanent custody, and closing the case at the six-month review hearing is not authorized under the juvenile code. DHS and C.N.'s ad litem have filed a joint brief, and they concur with Ingle's overall contention that the circuit court failed to adhere to the requirements of the applicable statutes before granting permanent custody and ceasing reunification services, particularly when the circuit court halted services without notice, which they contend is required by Arkansas Code Annotated section 9-27-365 (Repl. 2009).
>
> Unfortunately, we are not able to resolve this issue because it is being raised for the first time on appeal.

Here, once again, compliance with the juvenile code by the circuit court in granting

custody to Neal and closing the case was not argued below. Thus, once again we are precluded from reaching the issue. However, for the dissent to suggest that our previous opinion and mandate directed the circuit court to act outside of the authority of the juvenile code and close the case is absurd. Moreover, for the dissent to say that reversing the order which closed the case in *Ingle I* deprived the circuit court of jurisdiction to continue the dependency neglect proceedings has no foundation. *See* Ark. Code Ann. § 9-27-355.

The dissent attempts to rewrite *Ingle I*, to state that we directed the circuit court to close the dependency neglect case. However, that we did not and could not do, as this court—like the circuit court—has no authority to ignore the juvenile code.

**DONALD L. CORBIN, Justice, dissenting.** The question of whether the circuit court acted in excess of its authority becomes a matter of subject-matter jurisdiction and may be raised sua sponte. *Cincinnati Ins. Co. v. Johnson*, 367 Ark. 468, 241 S.W.3d 264 (2006). In our unvarying application of the rule, we have stated that subject-matter jurisdiction is always open, cannot be waived, can be questioned for the first time on appeal, and can even be raised by this court. *Id*. Because the circuit court did not properly have subject-matter jurisdiction of this case, I respectfully dissent.

In *Ingle v. Arkansas Department of Human Services*, 2014 Ark. 53, 431 S.W.3d 303, Chief Justice Hannah and I joined Justice Danielson's concurrence in part and dissent in part because the case focused primarily on an uncertain and potentially dangerous set of circumstances surrounding the minor, C.N., between November 2012, when the circuit court awarded custody, and February 6, 2014, the date of this court's opinion. Justice Danielson illuminated

11



this concern by stating that

> the instant case is one of dependency-neglect, which is exceedingly different from the ordinary case in equity. Even if the record could be considered fully developed in the instant case, the record before us most certainly concludes with the circuit court's 2012 order, and there is absolutely no way of knowing what has transpired in these people's lives since that time. . . . Nonetheless, it is C.N.'s best interest that is the polestar consideration, and I, for one, think the more responsible course and prudent disposition would be for this court to reverse and remand, such that further proceedings in the matter could be had.

*Ingle*, 2014 Ark. 53, at 10–11, 431 S.W.3d at 309.

The majority in *Ingle*, in an unprecedented break from authority, qualified the disposition of the case as follows:

> Accordingly, we *reverse the circuit court's order and remand with directions for the court to return custody of C.N. to Ingle.* Of course, this court cannot know what has transpired since the circuit court entered its order vesting custody in Neal. If facts have developed during the pendency of the appeal that would cause serious concern about returning C.N. to Ingle's care, *any party may file a petition* requesting the circuit court to address those matters.

*Ingle*, 2014 Ark. 53, at 9, 431 S.W.3d at 308 (emphasis added). On February 19, 2014, this court issued its mandate, and the mandate was filed in the Washington County Circuit Court on February 21, 2014. When the mandate was filed in the circuit court, this court lost jurisdiction to the circuit court. *Brimson v. Brimson*, 228 Ark. 562, 309 S.W.2d 29 (1958).

The Washington County Circuit Court, at that point in the case, was in the untenable position of following the majority's qualified disposition and the directive of the mandate "to return custody of C.N. to Ingle," who, as the facts in the record reveal, had been released from jail on a $10,000 bond and faced six felony charges in the Washington County Circuit Court, including aggravated robbery, a Y felony. The majority now claims that

12

[t]his directive was qualified in that the opinion included the caveat that any party was authorized to file a petition to alert the circuit court of any "serious concerns" that should be addressed before returning the child to Ingle's custody. Therefore, when this court issued the mandate and remanded the case, the circuit court was vested with jurisdiction to either enter an order placing custody of the child with Ingle or to entertain a petition to address matters of serious concern that had occurred during the pendency of the appeal.

Here, the majority is sorely mistaken in its reasoning because its qualified disposition gave unprecedented authority to the parties in the case—not to the Washington County Circuit Court. It is axiomatic that the lower court is bound by the judgment or decree of a higher court as law of the case and must carry the decision of the higher court into execution pursuant to the mandate issued by that court. *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 366 Ark. 463, 237 S.W.3d 20 (2006). We have made it very clear that "[d]irections by an appellate court to the trial court as expressed by the opinion and the mandate must be followed exactly and placed into execution." *Smith v. AJ & K Operating Co.*, 365 Ark. 229, 233, 227 S.W.3d 899, 902 (2006) (quoting *Wal-Mart Stores, Inc. v. Regions Bank Trust Dep't*, 356 Ark. 494, 499, 156 S.W.3d 249, 253 (2004)). Thus, the majority's sole directive to the circuit court was to return custody of the minor child to Ingle, who recently had been released from prison, without a hearing upon remand to determine the child's best interest. As an appellate court, we do not also give directives to or address the parties upon remand.

Because of the majority's erroneous qualified disposition in *Ingle*, the circuit court was without subject-matter jurisdiction to entertain DHS's petition for emergency hearing. After the mandate was filed in the Washington County Circuit Court on February 21, 2014, DHS filed a petition for emergency hearing under the same docket number, CV-13-570, as the

previous case appealed to this court. On February 28, 2014, the circuit court entered an order setting an emergency hearing in the case, noting it was "Remanded by [the] Arkansas Supreme Court" in "Case CV-13-570." Here, the circuit court erred because, cognizant of our limited directive to return custody to Ingle, it should have dismissed DHS's petition for lack of subject-matter jurisdiction. Instead, the circuit court exceeded its jurisdiction by entertaining DHS's petition for emergency hearing docketed under the same case number. Additionally, DHS could have retained custody of C.N. with Neal while it opened a new dependency-neglect case by filing a new *petition for emergency custody*, with a new docket number, seeking an emergency removal of custody from Ingle because of her six felony charges. *See* Ark. Code Ann. § 9-27-310 (Repl. 2009).

While I am sympathetic to the circuit court and DHS because of the predicament that resulted from the majority's qualified disposition in the prior appeal, I cannot ignore the plain fact that the circuit court acted wholly without jurisdiction. When the circuit court lacks jurisdiction, the appellate court also lacks jurisdiction. *See Clark v. State*, 362 Ark. 545, 210 S.W.3d 59 (2005) (citing *Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995)). For these reasons, I would dismiss the appeal for lack of subject-matter jurisdiction.

HANNAH, C.J., and DANIELSON, J., join in this dissent.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services; and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.