

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV-14-855

| | |
|---|---|
| CHRISTINA MOSHER<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br>APPELLEE | **Opinion Delivered** FEBRUARY 18, 2015<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>ELEVENTH DIVISION<br>[NO. 60JV-13-477]<br><br>HONORABLE PATRICIA JAMES,<br>JUDGE<br><br>AFFIRMED; MOTION TO<br>WITHDRAW GRANTED |

**CLIFF HOOFMAN, Judge**

Appellant Christina Mosher appeals from the order of the Pulaski County Circuit Court terminating her parental rights to her daughter, I.G. Mosher's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Rule 6-9(i) of the Rules of the Arkansas Supreme Court and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). The clerk of this court mailed a certified copy of counsel's motion and brief to Mosher's last known address informing her of her right to file pro se points for reversal; however, she has not done so.[1] We affirm the order of termination and grant counsel's motion to withdraw.

The Arkansas Department of Human Services (DHS) filed a petition for emergency

---

[1]A review of the tracking information provided by the United States Postal Service indicates that the package was delivered to the post-office box on December 10, 2014, but that it has not been picked up.

SLIP OPINION

custody of I.G. on February 15, 2013. In the affidavit attached to the petition, DHS stated that I.G. was born on February 12, 2013, and that she was in immediate risk of danger because Mosher was an unfit parent. The affidavit indicated that Mosher had four other children who had been adjudicated dependent-neglected in December 2011 due to parental neglect and who remained in DHS's custody. According to the affidavit, Mosher had been diagnosed with a personality disorder and borderline intellectual functioning, and her psychological evaluation characterized her as "incompetent as a parent." The affidavit further asserted that I.G.'s father was Steven Goddard, who was homeless and who had lived with Mosher for a short time. The affidavit stated that Goddard was on supervised parole and had allegedly used methamphetamine in Mosher's home. Mosher still remained married to Kenneth Mosher, however, who was the father of her four older children and who had been incarcerated for abusing one of the children.

The circuit court granted DHS's petition for emergency custody on February 15, 2013, and I.G. was placed in foster care. I.G. was adjudicated dependent-neglected on April 15, 2013, based on neglect and parental unfitness. The court found that Mosher's prior psychological evaluation, as well as her instability and her lack of judgment that had continued since her other children were removed from her custody, demonstrated that I.G. was at a substantial risk of serious harm if returned to Mosher's custody. The goal of the case was set as reunification, and Mosher was ordered to maintain stable housing, employment, and income, as well as to attend weekly supervised visits with I.G., contingent on passing weekly drug screens. The court further stated that Mosher must continue to comply with the services



ordered in her other case, that she needed to remedy her failure to use appropriate judgment, and that she had "to live a life that is safe for children."

A review hearing was held in August 2013, and the evidence showed that Mosher had obtained employment at a grocery store on April 15 but was fired only five days later. She had been employed at McDonald's since July. While Mosher had maintained the same residence, she had to request help from a church to pay her utility bills. When questioned about her relationship with Goddard, Mosher indicated that she had visited him and sent him money while he was incarcerated. Since he was released, Mosher stated that he had stayed at her home a few times, although their romantic relationship was over. Mosher had attended all weekly visits with I.G., although DHS reported that she had fed the child a Twinkie during one visit that caused I.G. to have an upset stomach for several days. The circuit court found that Mosher needed "to get moving" if she wanted to reunify with I.G. and that her gaps in employment and failure to regularly attend counseling sessions were not helpful in this regard. The court also stated that Mosher was not truthful about her relationship with Goddard and that "there is no trust in what mother says."

The permanency-planning hearing was held in February 2014, and Mosher testified that she was currently unemployed and doing miscellaneous small jobs, such as lawn care and remodeling. She stated that she had worked at McDonald's for less than three months. She also testified that she had moved to a new residence. Mosher refused to take responsibility for I.G. being removed from her custody, claiming that there was no legal reason why I.G. had been removed, other than the fact that her other children were in DHS custody, which she

stated was "horse crap." The circuit court took judicial notice of the fact that Mosher's parental rights had been terminated to her other children in January 2014 and found that there was no fit parent for I.G. at the time of the hearing based on Mosher's failure to make significant, measurable progress. The goal of the case was changed to termination of parental rights and adoption.

DHS filed a petition for termination of Mosher's parental rights as to I.G. on March 26, 2014, and alleged four separate grounds for termination pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2013): (1) that a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent; (2) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent; (3) that the parent had subjected the juvenile to aggravated circumstances based on a determination by a judge that there is little likelihood that services to the family will result in successful reunification; and (4) that Mosher had her parental rights involuntarily terminated as to siblings of I.G.

The termination hearing was held on April 30, 2014, and the DHS caseworker,

Samantha Parsons, testified that Mosher had failed to maintain stable employment, housing, or income. Parsons also indicated that she was concerned about Mosher's failure to accept responsibility for her actions, noting that if Mosher could not understand what she did in the past to cause her children to be removed, then she would not be able to correct her behavior. According to Parsons, Mosher had not made substantial measurable progress in the case, and given that I.G. had been out of the home for more than fourteen months, it was in I.G.'s best interest to terminate Mosher's parental rights and proceed with adoption. The adoption specialist, Kasheena Walls, testified that I.G. was very likely to be adopted based on her age, race, and sex, and that there were at least seventy-five potential adoptive families. The January 16, 2014 termination order as to Mosher's other children was also admitted into evidence.

Following the hearing, the circuit court entered an order on June 17, 2014, finding that there was clear and convincing evidence to support termination of Mosher's parental rights on all four grounds alleged in the petition and that termination was in I.G.'s best interest.[2] Mosher filed a timely notice of appeal from the circuit court's decision. Her counsel has filed a no-merit brief, in which he contends that there are no meritorious issues for appeal.

As counsel correctly notes, there were only two rulings adverse to Mosher during the termination proceeding. The first adverse ruling was the denial of a motion for continuance, and the second was the termination order itself. First addressing the continuance, Mosher filed her motion requesting a continuance on April 25, 2014, five days prior to the termination

---

[2]The circuit court also terminated Goddard's parental rights in this order; however, he is not a party to this appeal.

hearing. She asked for a continuance based on the fact that she had recently made progress in the case by obtaining employment and that she was continuing to develop a deeper bond with I.G. Prior to the start of the hearing on April 30, the circuit court noted that DHS and the attorney ad litem had not yet had a chance to file a response to the motion. These parties stated that they opposed the motion on the basis that any recent progress by Mosher was merely a factor for the circuit court to consider in its decision on whether to grant the petition and was not a reason to continue the hearing. The circuit court agreed and denied Mosher's motion.

A motion for continuance should be granted only upon a showing of good cause, and the circuit court's denial of a motion for continuance will not be reversed absent an abuse of discretion. *Cotton v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 455, 422 S.W.3d 130. A lack of diligence on the part of the movant in requesting a continuance is a factor to be considered by the circuit court in deciding whether to grant the motion. *Id.*

Here, as the circuit court noted, Mosher filed her motion for continuance only three business days prior to the scheduled termination hearing. In addition, there was no good cause for continuance demonstrated in her motion, as her recent progress in the case was evidence that would be presented at the termination hearing and considered by the circuit court in its decision on whether or not to grant the petition. Thus, the circuit court did not abuse its discretion in denying the motion for continuance, and there would be no meritorious basis for an appeal on this issue.

The second adverse ruling was the circuit court's decision to terminate Mosher's

parental rights. A trial court's order terminating parental rights must be based upon findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Dinkins*, *supra*. On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

Pursuant to Ark. Code Ann. § 9-27-341(b)(3), an order terminating parental rights shall be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

While the circuit court's order in this case found clear and convincing evidence to support all four grounds alleged in the termination petition that were pertinent to Mosher, only one ground must be proven to support termination. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Under Ark. Code Ann. § 9-27-

341(b)(3)(B)(ix)*(a)(4)*, a finding that a parent has had his or her parental rights involuntarily terminated as to a sibling of the child is immediate grounds for termination. *Phillips v. Ark. Dep't of Human Servs.*, 85 Ark. App. 450, 158 S.W.3d 691 (2004). The January 2014 order of termination as to Mosher's four other children was entered into evidence at the hearing in this case, and the clear and convincing evidence establishing this ground was sufficient, by itself, to support the circuit court's termination order. Thus, discussion of the evidence supporting the other alleged grounds for termination is unnecessary.

The circuit court's finding that termination of Mosher's parental rights was in I.G.'s best interest was also not clearly erroneous. The court found that I.G. had been removed based on Mosher's "utter inability to show that she can safely parent a child, including her poor decision making that would put any child in her care at risk." After more than one year of services in this case, in addition to the services that she received in her other DHS case, the court found that Mosher still refused to accept responsibility for her actions and was not a fit and proper parent. The court also specifically found that I.G.'s health and safety would be at risk if she were returned to her mother and that I.G. was adoptable. Thus, there would be no merit to an appeal challenging the termination of Mosher's parental rights.

Based on our review of the record and the brief submitted, we conclude that counsel has complied with Arkansas Supreme Court Rule 6-9(i) and agree that the appeal is without merit. Therefore, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.
ABRAMSON and HIXSON, JJ., agree.
*Aaron Scott Hill*, for appellant.
No response.