

Cite as 2015 Ark. App. 359

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-15-122

| | |
|---|---|
| BECKY MATTHEWS<br>APPELLANT | **Opinion Delivered** June 3, 2015 |
| V. | APPEAL FROM THE MADISON<br>COUNTY CIRCUIT COURT<br>[NO. J-14-62] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILD<br>APPELLEES | HONORABLE STACEY<br>ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Becky Matthews appeals the Madison County Circuit Court order adjudicating her infant daughter, A.M., dependent-neglected under the Indian Child Welfare Act ("ICWA"). On appeal, Matthews argues that there is insufficient evidence to support the circuit court's finding. We affirm.

On September 14, 2014, Matthews gave birth to A.M. in Bentonville, Arkansas. At birth, A.M. weighed 5 pounds 6 ounces. On September 18, 2014, Matthews took A.M. to see Dr. Jeffrey Savage for a routine check-up at Harvey Pediatrics Clinic. Dr. Savage noted that since her birth, A.M.'s weight had dropped to 4 pounds 13 ounces. Matthews reported to Dr. Savage that A.M. was having difficulty feeding and that she thought she may be "tongue tied." Dr. Savage observed that A.M. had a short lingual frenulum, so he cut approximately two millimeters of her lingual frenulum. After the procedure, A.M.'s tongue protrusion improved. He scheduled a weight check for September 22, 2014.

On that date, Dr. Savage observed that A.M.'s weight remained unchanged. Matthews reported to Dr. Savage that A.M. was refusing her breast and that A.M. would fall asleep after feeding for five minutes. She further reported that her first child, R.H., was also very small for her age and had difficulty feeding.[1] A nurse counseled Matthews on ways to stimulate A.M. during feeding and gave her a syringe to "finger feed."

On September 25, 2014, Matthews returned to the clinic. She did not see Dr. Savage but informed the medical professional that she continued to experience breast-feeding problems and also noticed white spots on A.M.'s lips and inside her mouth. She also reported that she tried to mix formula with breast milk to help A.M. gain weight. A.M. was diagnosed with thrush and was prescribed Nystatin.

On September 26, 2014, Matthews returned to the clinic with A.M. for a weight check with Dr. Savage. Dr. Savage noted that A.M.'s weight had increased to 4 pounds 14 ounces. He noted that A.M. was still thin but was otherwise active. Matthews reported to Dr. Savage that she continued to have difficulty breast feeding A.M. and that A.M. had begun spitting up after feeding.

On October 1, 2014, Dr. Savage saw A.M. again. He observed that her weight had decreased to 4 pounds 13 ounces. Because A.M. continued to lose weight, Dr. Savage diagnosed A.M. with failure to thrive and admitted her into the intensive care unit ("ICU"). He implemented a feeding schedule, which required Matthews to feed A.M. every three hours, and asked the nursing staff to monitor A.M.'s calorie intake and to observe Matthews's

---

[1] Sometime after R.H.'s birth, Matthews gave custody of the child to a family friend.

interactions with A.M. Dr. Savage shared his plan with Dr. Bryan Harvey, the on-call physician.

On October 3, 2014, after Dr. Harvey and a medical team had observed A.M. and Matthews for nearly three days, Dr. Harvey determined that A.M. suffered from nutritional neglect due to Matthews's inability to properly feed A.M. He contacted the Arkansas Department of Human Services ("DHS"), and DHS petitioned for emergency custody of A.M. The circuit court held a probable-cause hearing, where it was determined that Matthews and A.M. were members of the Cherokee Nation. Thus, the court found the proceedings were governed by the ICWA. The court also found that probable cause existed for the emergency custody and set an adjudication hearing for November 7, 2014.

At the hearing, Dr. Harvey testified over the telephone that he supervised A.M.'s hospitalization. He stated that A.M. was significantly malnourished when she was admitted to the ICU. He testified that in the ICU, a medical team observed Matthews and A.M. during feedings and documented A.M.'s calorie intake. He testified that A.M. experienced no medical illnesses, but she suffered from calorie deficiency as a result of Matthews not properly feeding her. He stated that he made this diagnosis based on the hospital staff's observations of Matthews's inattentiveness to A.M.'s needs. Specifically, Dr. Harvey testified that they had to wake Matthews to feed A.M. and that Matthews gave A.M. the wrong volume of milk. He also testified that Matthews appeared very lethargic. He stated that he and the medical team tried to work with Matthews, but she did not respond to the help. He testified that the nursing staff eventually assumed care for A.M., and once the nursing staff took over, A.M.

began to gain weight. Dr. Harvey testified that once A.M. received the appropriate nutrition, her head circumference increased from the tenth percentile to the twenty-sixth percentile. He explained that malnutrition affects a baby's brain growth, and if an infant suffers six weeks of malnutrition, her brain growth will stop. He testified that he called DHS after diagnosing A.M. with calorie neglect because he believed that A.M.'s development would be hindered if she was returned to Matthews's custody. He noted that Matthews had a genuine attachment to A.M., but he did not believe Matthews was capable of providing the round-the-clock care an infant needed.

Antoinette Johnson, the DHS family-service worker assigned to A.M.'s case, testified that a medical official at Northwest Medical Hospital in Bentonville reported to DHS that A.M. had been diagnosed with failure to thrive and that the hospital had concerns about the infant returning to her mother's custody. She stated that after receiving the call, she went to the hospital and met with Matthews. She testified that she believed Matthews needed psychological services and that A.M. should not return to Matthews's care. Johnson testified that she thought Matthews looked for medical problems with A.M., which she found extremely concerning.

Nicole Allison, a child-welfare specialist with the Cherokee Nation, testified that she believed that the return of A.M. to the custody of Matthews would result in serious emotional or physical damage to the child. She also testified that no tribal foster homes were available for A.M., but the tribe believed that A.M. should be placed with the family where her sister, R.H., currently lived. She further agreed that DHS made active efforts to prevent A.M.'s

 

removal from Matthews.

Matthews also testified at the hearing. She testified that she currently lived with a friend in an apartment. She stated that she has bipolar disorder but does not take medication, noting that her doctor took her off her medication during her pregnancy. She disagreed with Dr. Harvey that the nurses had to awaken her to feed A.M. She also denied that the medical team advised her how to feed A.M. She further testified that she believed that Dr. Harvey and the medical team's feeding instructions caused A.M.'s weight problems.

During final statements, Matthews asked the circuit court not to find A.M. dependent-neglected. Specifically, Matthews's attorney stated that

> Ms. Matthews has testified today, and Dr. Harvey did state that she was very concerned for her daughter, was following through on her care and trying to figure out her problems with not gaining the weight. And she believes that she is not at fault for her daughter not gaining weight, as she's testified that she was given instructions by the doctor and she felt that the formula and the things that she was instructed to do was continually causing her baby to not gain the weight. So she would ask that this Court not find that the child or children are dependent-neglected for failure to thrive or malnourishment.

The circuit court denied Matthews's request and adjudicated A.M. dependent-neglected. Matthews filed this appeal.

In dependency-neglect proceedings, the standard of review on appeal is de novo, although we do not reverse unless the trial court's findings are clearly erroneous. *See Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, 449 S.W.3d 283. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *See id*. We give due deference to the superior position of the trial court to view and judge the credibility of

the witnesses. *Mosher v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 111, 455 S.W.3d 367. This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial judge to utilize to the fullest extent of her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Callison v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 592, 446 S.W.3d 210.

A dependent-neglected juvenile is one who is at substantial risk of serious harm as a result of abandonment, abuse, sexual abuse, sexual exploitation, or neglect. Ark. Code Ann. § 9-27-303(18)(a) (Supp. 2013). In dependency-neglect cases where the ICWA applies, the court must find, through the testimony of a qualified expert witness, that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child and that "active efforts" have been made to prevent the breakup of the Indian family and these efforts have proved unsuccessful. 25 U.S.C. § 1912 (d)–(e). Further, in ICWA cases, dependency-neglect must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-325(h)(3)(a) (Supp. 2013).

On appeal, Matthews argues that the circuit court erred in adjudicating A.M. dependent-neglected because the record fails to demonstrate that (1) A.M.'s failure to thrive resulted from Matthews's inability to meet A.M.'s needs; and (2) DHS provided active efforts to prevent removal.

As to her first argument, Dr. Harvey's testimony demonstrates that A.M. suffered from failure to thrive as a result of Matthews's inability to properly feed A.M. He stated that the nursing staff had to assume care for A.M. because Matthews skipped feedings and failed to

give A.M. the proper volume of milk. Dr. Harvey further testified that A.M.'s healthy brain development depends on her receiving proper nutrition and that he did not believe Matthews could provide that nutrition to A.M.[2] Matthews argues in her brief that Dr. Harvey's opinion is incorrect and that his feeding instructions actually caused A.M.'s weight loss. However, this court gives due deference to the opportunity of the circuit court to judge the witnesses' credibility. *Mosher,* 2015 Ark. App. 111, 455 S.W.3d 367. As to Matthews's argument concerning DHS's active efforts, Nicole Allison, the Cherokee Nation child–welfare specialist, testified that DHS made active efforts to prevent A.M.'s removal from Matthews. Further, Dr. Harvey testified that the medical team tried to work with Matthews during A.M.'s hospitalization, but Matthews was unresponsive. Accordingly, the circuit court did not err in adjudicating A.M. dependent–neglected.

Affirmed.

GLOVER and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.

---

[2] Matthews does not dispute that Dr. Harvey is a qualified expert witness.