Cite as 2020 Ark. App. 250

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-782

| | |
|---|---|
| CYNTHIA BUTLER FARRELL<br>APPELLANT<br><br>V.<br><br>HANFORD FRANCIS FARRELL<br>APPELLEE | **OPINION DELIVERED:** APRIL 22, 2020<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FDR-09-580]<br><br>HONORABLE JAMES O.COX, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Cynthia Butler Farrell ("Cindy") appeals for the fourth time the Sebastian County Circuit Court's decision in her divorce case from appellee Hanford Francis Farrell ("Hank").[1] On the third remand from this court, the circuit court held that equal shares of stock and ownership units of business entities owned by the parties at the time of their divorce should be issued to each party effective February 22, 2017, the date this court's mandate from *Farrell III* was filed.[2] Cindy argues on appeal that the circuit court erred in

---

[1] *Farrell v. Farrell*, 2017 Ark. App. 7, 510 S.W.3d 787 (*Farrell III*); *Farrell v. Farrell*, 2014 Ark. App. 601 (*Farrell II*); *Farrell v. Farrell*, 2013 Ark. App. 23, 425 S.W.3d 824 (*Farrell I*).

[2] These entities as listed in the circuit court's July 2, 2019 "Order for Division of Marital Stock" are as follows: (1) Farrell-Cooper Mining Company (Arkansas); (2) Laredo Solid Fuels, Inc. (Texas); (3) Farrell-Cooper Land Company, LLC (Arkansas); (4) ALT Development, Inc. (Texas); (5) AR Development, Inc. (Texas); (6) Fartex Investments, Ltd. (Texas); (7) Farrark Investment, Ltd. (Texas); (8) LSF Investments, Ltd. (Texas); (9)

dividing the parties' marital business interests on the date of the last appellate mandate rather than the date of divorce. She also argues that the circuit court erred in granting Hank's motion to quash her notice to take deposition duces tecum. We affirm.

I. *Procedural History*

The issues before us in *Farrell III* were whether the circuit court erred in its distribution of the parties' marital property and whether the circuit court abused its discretion in failing to award Cindy traditional, need-based alimony. We upheld the circuit court's decision on alimony but reversed and remanded on the issue of distribution of the marital property. *Farrell III*, 2017 Ark. App. 7, at 7–9, 510 S.W.3d at 791–92. We stated,

> In each of its orders leading to *Farrell I* and *Farrell II*, the circuit court found that each party's share of the marital estate was worth approximately $5.2 million. It did not modify that finding in subsequent orders; the only mention of an unequal distribution was of the stock in the Farrell-Cooper Companies being awarded to Hank with Cindy receiving most of the parties' liquid assets. Therefore, we surmise that the circuit court intended for each party to receive an equal share of approximately $5.2 million. Under the decree as amended, Cindy was awarded $1.045 million in liquid assets. Hank was permitted to pay to Cindy her outstanding share of the property division as "alimony" of $13,000 per month for the remainder of Cindy's life. The circuit court later clarified on remand from *Farrell II* that the payments were indeed intended as reimbursement for Cindy's share of the marital property. However, the court made no provision for what would happen to the payments in the event of the death of either party. The court also did not address interest on the payments.
>
> The circuit court's approach is not equitable to either party. As we pointed out in *Farrell II*, it would take over twenty-six years to pay Cindy the remaining $4.16 million due for her share of the marital property. *Farrell II*, *supra*, at 7. It is unfair to Hank to make him continue until he is in his eighties to pay Cindy for her share of the marital property. It is likewise unfair to make Cindy wait until she is also in her eighties to have the full enjoyment of her share of the marital property while Hank is able to fully use his share now. By requiring that all property be divided and distributed at the time the divorce decree is entered, Arkansas Code Annotated

Choctaw Materials, LLC (inactive); (10) Sugarloaf Enterprises, LLP (inactive); and (11) Shady Point Resources, LLP (inactive).

2

section 9-12-315(a) seeks to disentangle the parties' financial affairs and make them free from each other's interference.

*Id.* at 4–5, 510 S.W.3d at 790.

We held that Arkansas Code Annotated section 9-12-315(a)(4) (Repl. 2015) governs this issue, and it provides as follows:

> When stocks, bonds, or other securities issued by a corporation, association, or government entity make up part of the marital property, the court shall designate in its final order or judgment the specific property in securities to which each party is entitled, or after determining the fair market value of the securities, may order and adjudge that the securities be distributed to one party on condition that one-half (1/2) the fair market value of the securities in money or other property be set aside and distributed to the other party in lieu of division and distribution of the securities.

Relying on this statute and *Hodges v. Hodges*, 27 Ark. App. 250, 770 S.W.2d 164 (1989) (holding that a circuit court has two options when dividing corporate stock in a divorce: (1) designate the specific property in stock to which each party is entitled, or (2) order that the stock be distributed to one party and the other party receive one-half of the fair market value of the stock in money or other property; specifically, Ark. Code Ann. § 9-12-315(a)(4) does not authorize a stock sale and division of the proceeds), this court said,

> We recognize that the Farrell-Cooper Companies and the Texas entities are closely held family corporations and, as such, have limited marketability. We further recognize that the circuit court did not want to make Cindy a shareholder because her lack of knowledge of the business and her lack of trust toward Hank's family members running the business would make her, in the words of her attorney, an "officious intermeddler." We also have before us the circuit court's finding that Hank lacks the ability to borrow sufficient funds with which to pay Cindy for her interest in the marital property. However, these findings cannot in any way justify the circuit court's departure from its obligation to make an equitable division of the parties' marital property. Nor do the same findings justify ignoring section 9-12-315(a)'s command that the marital property be distributed at the time of the divorce. *See Russell v. Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982). Accordingly, we hold that the circuit court erred by allowing Hank to pay a substantial portion of Cindy's share of the marital property over a multi-year period. Upon remand, the circuit court should, pursuant to section 9-12-315(a)(4), order an immediate equal division of the

stock. Hank is to be given credit against Cindy's share of the marital property for the monthly "alimony" payments he has made since entry of the original decree.

*Farrell III*, 2017 Ark. App. 7, at 6–7, 510 S.W.3d at 791–92.

## II. *On Remand from* Farrell III

The mandate of this court was issued on February 22, 2017. Cindy filed a notice to take Hank's deposition and requested that he bring (1) the books and records of account as well as minutes of the proceedings of the shareholders and board of directors of Farrell-Cooper Mining Company, Inc., Farrell-Cooper Land Company, Laredo Solid Fuels, Inc., and the Texas LLCs for the years 2011 through 2018; (2) a current list identifying the full name and last known mailing address of each shareholder and/or member of the corporate entities; and (3) copies of the corporate entities' stock certificates in Hank's name; annual financial statements for the years 2011 through 2018; and a list of any and all current assets. Hank filed a motion to quash, arguing in part that any discovery would exceed the mandate from the Arkansas Court of Appeals.

In a letter opinion dated March 27, 2019, the circuit court granted Hank's motion to quash.[3] The letter also quotes this court's opinion in *Farrell III* regarding the division of the stock and states, "The division shall be the stock as it existed as of the time the divorce decree was entered, also pursuant to the mandate." The court set a hearing for May 1, 2019, "at which time the delivery of the stock and an accounting of those numbers of shares that existed at the time of the decree of the divorce will be provided to the Court and the exchange of stock will be made." The court also stated that it was not for "this court to

---

[3]This ruling was included in the circuit court's final order of July 2, 2019.

determine" what had occurred with the stock since the date of divorce, but it was to carry out the mandate of the Arkansas Court of Appeals.

At the remand hearing on May 30, 2019, Hank's attorney stated, "We do not believe that Mr. Farrell can get $832,000 from Ms. Farrell or out of her share of the marital property, and Mr. Farrell doesn't even want that. That credit can just be a firewall against any future claims in this case, and that will basically end it. . . . The mandate doesn't say to conduct discovery. It directs the court to divide the shares of stock." Cindy, through her attorney, argued that the reason for discovery was to determine any differences in what Hank owned in 2011 and what he currently owned. Cindy objected to Hank's proposed order because she did not know, without discovery, whether it was "complete."

The circuit court stated,

> We're here after ten years of discovery and litigation and appeals. I'm not going to believe that this hasn't been hashed out previously to today with regard to ownership and stock. So, Mr. Hogue [Cindy's lawyer], if you want to put your client on the stand and have her tell this court what it is that she believes is still out there, you can. . . . I'm also going to have Mr. Horan [Hank's lawyer] put [Hank] on the stand to tell me that this is all there is. . . . [Cindy] can look in the books then, once she becomes a shareholder. To me, my task is just to see that she is put in position of ownership. What still remains out there is the $832,000 credit that [Hank] is supposed to get with regard to the division of all these things.

Cindy argued that a deposition before the hearing would have given her more information than she had and that by asking her to testify, the court was asking her to "prove the negative" because she did not know what was "not there."

Hank testified that his affidavit of May 30, 2019, fully and completely set out all their ownership interest in Farrell-Cooper Mining at the time of their divorce. He said that "nothing has really changed." He further stated that he had not disposed of any stock in

5

any of those corporate entities. He said, "Metamining was a company [that] bought a reserve from Farrell-Cooper in 2009. We had a coal deposit, a reserve . . . . They bought that reserve from us back in 2008 or 2009[.]" He later said, "I do not receive residuals based on that Metamining acquisition, nor did I ever. When they purchased it, it was a structured payout, a one-time deal. It was supposed to take them five years to pay for it, but I think it took them about seven years. It was $20 million."

Cindy asked the circuit court to find the specific date that she became owner of her one-half interest in stock in all the entities. Hank's attorney argued,

> [Cindy] resisted for eight years becoming owner of the shares of the stock. In that period of time, there have been taxes paid. There have been all kinds of things happening. [Hank] has had to guarantee loans. [Cindy] is not on the loans that the company has had to take out to operate; [Hank] is solely on those loans. I think it goes to the date of the mandate, not back to 2011. The Court of Appeals said, here is the stock to which you are entitled. And then from the mandate forward, she is a stock owner. She can't resist the acceptance of what would have been an equitable solution for eight years and then say, well then, I want to do it as of this day or that day when so much has gone over the dam.

The circuit court interpreted this court's mandate of an "immediate equal division of the stock" to mean a division of property on the date of this court's mandate. The circuit court acknowledged that Hank was to receive an $832,000 credit against Cindy's share of the marital property for the alimony he had paid. The circuit court said, "[Cindy] doesn't have $832,000. I don't think she'll have $832,000 out of this stock once she gets it. But it exists, and that part of the mandate should be set out in some manner in the final order that is issued by this court."

The order filed July 2, 2019, divides the marital property as of February 22, 2017, and further states,

Before the mandate was issued and received, [Hank] made 64 alimony payments of $13,000 each (initially $10,000, but later raised to $13,000 retroactive to November 2011), a total of $832,000. This amount ($832,000) shall stand as a credit (and not as a judgment against [Cindy]) against the marital property (stock and units) distributed by this Order to Cindy Butler Farrell, and any net proceeds from those shares and units up until the date of the mandate. If [Cindy], in future, makes demand for an accounting or indemnity by [Hank] with respect to any net distributions or dividends paid to [Hank] by any entity with respect to which he was a shareholder or a unit member between November 8, 2011 (the date of the Original Decree), and February 22, 2017 (the date of the mandate), the $832,000 paid by him as alimony shall stand as a credit against that, but will not carry over after February 22, 2017. [Hank] shall otherwise account to [Cindy] for any pass-through income, dividends, or distributions (net of state and federal taxes) received by or in his name from the corporations, LLCs, and other entities listed in this Order, on or after February 22, 2017.

On appeal from this order, Cindy contends that the circuit court erred by not dividing the business assets according to the statute, which provides that marital property should be divided at the time a divorce decree is entered. *See* Ark. Code Ann. § 9-12-315(a). She also claims that the circuit court erred in granting Hank's motion to quash deposition.

III. *Statement of Law*

The Arkansas Supreme Court has addressed the circuit court's duty on remand as follows:

"The mandate is the official notice of action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed." *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, at 5–6, 449 S.W.3d 283, 287. We have long held that the circuit court must execute the mandate on remand, and under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Id.* at 6 (quoting *Dolphin v. Wilson*, 335 Ark. 113, 118, 983 S.W.2d 113, 115 (1998)). We have further observed that the lower court is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate. *City of Dover v. Barton*, 342 Ark. 521, 525, 29 S.W.3d 698, 700 (2000). Thus, the question of whether the lower court followed the mandate is not simply one of whether the

7

> lower court was correct in its construction of the case but also involves a question of the lower court's jurisdiction. *Ingle*, *supra*. When a case is remanded for a specific act, the entire case is not reopened; rather, the lower tribunal is only authorized to carry out the appellate court's mandate and may be powerless to undertake any proceedings beyond those specified. *Id*. If an appellate court remands with specific instructions, those instructions must be followed exactly to ensure that the lower court's decision is in accord with that of the appellate court. *Id*. at 6–7. The lower court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. *City of Dover*, *supra*.

*Moore v. Moore*, 2019 Ark. 216, at 7–8, 576 S.W.3d 15, 20–21. And in *Ward v. State*, 2017 Ark. 215, 521 S.W.3d 480, our supreme court ruled that because of limited jurisdiction on remand, the circuit court did not have the power to correct any perceived errors.

## IV. *Issues on Appeal*

### A. Date of Division of Marital Property

Cindy argues that the circuit court erred by dividing the parties' marital business interests as of the date the last appellate mandate was filed as opposed to the date of their divorce. She relies on Arkansas Code Annotated section 9-12-315(a)(1)(A), which provides that marital property should be equally divided "at the time a divorce decree is entered." Following the rules of statutory construction, the language of the statute is clear and unambiguous; accordingly, she contends that the effective date of division should be the date of the divorce decree, November 9, 2011. *See Stephens v. Ark. Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000) (in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept that interpretation as correct on appeal).

Relying on *Farrell III*, Cindy contends that the circuit court erred. *Farrell III* states in part,

> Nor do the same findings justify ignoring section 9-12-315(a)'s command that the marital property be distributed *at the time of the divorce*. *See Russell v. Russell*, 275 Ark.

8

193, 628 S.W.2d 315 (1982). Accordingly, we hold that the circuit court erred by allowing Hank to pay a substantial portion of Cindy's share of the marital property over a multi-year period. Upon remand, the circuit court should, pursuant to section 9-12-315(a)(4), order an immediate equal division of the stock.

*Farrell III*, 2017 Ark. App. 7, at 7, 510 S.W.3d at 791–92 (emphasis in original). Cindy argues that the law-of-the-case doctrine holds that a decision of an appellate court establishes the law of the case for a circuit court upon remand and for the appellate court itself upon further review. *Harmon v. State*, 2019 Ark. 34, at 3. Further,

Where a remand limits the issues for determination, the court on remand is precluded from considering other issues, or new matters, affecting the cause. *Dolphin*, [*supra*]. Thus, when a case is remanded for a specific act, the entire case is not reopened, but rather the lower tribunal is only authorized to carry out the appellate court's mandate, and the trial court is generally powerless to undertake any proceedings beyond those specified. *Id*. at 119, 983 S.W.2d at 115–16. New proof or new defenses cannot be raised after remand when they are inconsistent with this court's first opinion and mandate. *Dolphin*, 335 Ark. at 119, 983 S.W.2d at 115–16. If an appellate court remands with specific instructions, those instructions must be followed exactly to ensure that the lower court's decision is in accord with that of the appellate court. *Id*.; *see also City of Dover*, [*supra*].

*Id*. at 4–5.

Cindy contends that the circuit court understood the mandate because its March 27 letter states, "The division shall be the stock as it existed as of the time the divorce decree was entered, also pursuant to the mandate." She also argues that the date of division matters because "Hank has taken dividends and distributions since the parties' divorce, and there was a $20 million buyout of certain Farrell-Cooper Mining Company property."

Hank contends that through two appeals, all corporate entities in which he held any interest had been identified, examined by experts, and discussed by the circuit court and reviewed by this court. *See Farrell II*, *supra*; *Farrell I*, *supra*. He recites the history of the litigation and the circuit court's decision on remand after *Farrell III* and concludes that the

9

order below is as equitable as it can be and is even favorable to Cindy because under the order, Cindy is spared a guarantor's liability on corporate loans, but Hank is not.

We agree with Hank's argument that the circuit court obeyed the mandate by ordering the shares of stock to be divided "immediately," not retrospectively. There have been three mandates in this case, and any retrospective "correction" would have to penetrate two mandates previous to *Farrell III*. The parties have made decisions and have paid and received substantial amounts of cash in reliance on the previous orders. If they are obliged to divide the shares as of November 2011, then equity might require all the marital property existing on that date to likewise be divided by halves, including the $700,000 in a 401k account that was awarded solely to Cindy, along with the equity from the two houses they had owned.

In *Farrell III*, this court stated that an immediate division of stock was necessary for several reasons, including Hank's inability to borrow sufficient funds with which to pay Cindy for her interest in the marital property. *Farrell III*, 2017 Ark. App. 7, at 6, 510 S.W.3d at 791. Contrary to Cindy's argument, the circuit court's March 27 letter illustrates the circuit court's understanding of the mandate—to divide the marital property the parties had as it existed at the time of the divorce decree, also pursuant to the mandate. Accordingly, the mandate orders an "immediate" division of stock, not a retrospective division. We hold that the circuit court followed the letter and spirit of the mandate, taking into account the opinion and the circumstances, and it committed no error. *See Moore*, *supra*.

B. Motion to Quash

Cindy argues that she was entitled to discovery pursuant to Arkansas Rule of Civil Procedure 26(b)(1) (2019) because she sought relevant information that was reasonably calculated to lead to the discovery of admissible evidence. She acknowledges that the standard of review on a discovery matter is whether the circuit court abused its discretion. *See Hill v. Kelly*, 2014 Ark. 34, at 6. She contends that she was trying to discover what she owns and how the character of what she owns has changed from the date of the divorce until the noticed deposition. She claims that (1) she should not be forced to rely on Hank's testimony; (2) she was entitled to depose Hank for the purposes of impeachment; (3) she is entitled to know what she owned as of the date of the parties' divorce; and (4) Hank had taken dividends and distributions between the date of divorce and the date of the remand hearing; further, Farrell-Cooper Minding Company had also received the last of the installment payments on a $20 million deal that was consummated before the parties' divorce. She claims that the circuit court abused its discretion by allowing Hank to testify as to the entities' finances, distributions, ownership, operations, and other matters. She argues that she was directly prejudiced by being unable to develop the facts and by being forced to rely solely on Hank's affidavit and hearing testimony.

We hold that the circuit court correctly denied discovery under the mandate from *Farrell III*. We agree with Hank's contention that after *Farrell I* and *Farrell II*, the record was complete, and *Farrell III* asked the circuit court to execute the division of stock and establish a credit. *See, e.g.*, *Durham v. Smith*, 2012 Ark. App. 690. The record in this matter and Hank's inventory filed after remand are evidence of what the parties owned at the time of

their divorce. Instead of valuations, this court mandated that the circuit court divide the stock, making consideration of the value irrelevant. Accordingly, we affirm.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Steven S. Zega* and *Matthew L. Fryar*, for appellant.

*Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*, for appellee.