SLIP OPINION

Cite as 2014 Ark. App. 592

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-584

| | |
|---|---|
| HEATHER CALLISON and JOSEPH DAVIDSON<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD<br>APPELLEES | **Opinion Delivered** October 29, 2014<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[No. JV-2014-47]<br><br>HONORABLE VICKI SHAW COOK, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellants, Heather Callison and Joseph Davidson, appeal from the order entered on April 2, 2014, by the Garland County Circuit Court, adjudicating their daughter, ED (d/o/b July 16, 2012), dependent-neglected and finding the existence of aggravated circumstances. Appellants concede the dependency-neglect finding. Their sole challenge on appeal is that there is insufficient evidence to support the trial court's finding of aggravated circumstances. We affirm.

The relevant evidence presented at the adjudication hearing revealed that on January 9, 2014, the Department of Human Services (DHS) exercised a seventy-two-hour hold on ED after an incident that had occurred earlier that day. Davidson left ED, who was approximately eighteen months old, in the care of Callison for about thirty minutes while he ran an errand. When he returned, Callison ran into the yard with an unresponsive ED in her arms. Callison

told Davidson that ED had fallen off the couch. Davidson administered CPR and called 911. Meanwhile, Callison attacked the family dog, whom she blamed for the child's condition.

ED was taken to the emergency room in Hot Springs for treatment. There, she was intubated on a ventilator for respiratory support. Also, drug testing on ED indicated the presence of methadone and benzodiazepines. ED was transferred that same day to Arkansas Children's Hospital in Little Rock, where she was treated by pediatrician Dr. Karen Farst. Dr. Farst testified that ED's altered level of consciousness and breathing distress raised concern that she had been exposed to or ingested a drug. Subsequent drug testing of ED at Children's Hospital did not confirm the presence of methadone;[1] however, it did confirm the presence of tramadol, one of Callison's prescribed pain medications. Dr. Farst testified that the consumption of too much tramadol can cause respiratory depression and coma. She further testified that

> the event that [ED] suffered was a life-threatening event. She had to have . . . help with her breathing because she was so impaired from what had happened. So without medical care she could . . . have actually either had some permanent brain damage from lack of oxygen or even died from this. And so . . . it was a very severe situation. And . . . my biggest concern, really, was for her . . . ongoing safety if she . . . stayed in an environment where this type of thing could happen to her.

Judy Jenson, the Department of Children and Family Services Investigator, testified that based on her investigation, the allegations of failure to protect, inadequate supervision, and

---

[1]Dr. Farst testified that the failure of the second test to detect methadone did not necessarily mean that it was not present in the first sample taken from ED in Hot Springs because methadone can "clear out of [a person's] system on the next void." She also said that the benzodiazepine, which showed up on the initial drug screen, could have been given to ED by hospital personnel in order to intubate her.

medical neglect were true. She said that her investigation revealed that Davidson was aware that Callison suffered from untreated mental-health issues (bipolar disorder and schizophrenia); she had been acting erratically for the last six weeks; she left her medicine on the floor, within ED's reach, and Davidson was afraid that ED would put it in her mouth; and Callison was not able to safely and appropriately care for the child.

Davidson testified that Callison suffered from "bipolar depression" and that he had been concerned about her behavior in November and December of 2013, but that he took her to the doctor, who prescribed a medication, and her condition improved. He added that Callison's behavior on the day of the incident was normal and that he would not have left ED with Callison otherwise. He offered no explanation for how ED could have consumed tramadol, stating that Callison kept her medicine away from ED.

At the conclusion of the hearing, the trial court from the bench found that ED was dependent-neglected based on inadequate supervision. The trial court cited evidence that Callison had been acting erratically for the six weeks leading up to the incident and that she had dropped her medication on the floor. The trial court further found that ED was subjected to aggravated circumstances of extreme cruelty based on Dr. Farst's testimony that ED experienced a life-threatening event and could have died or suffered permanent brain damage.

Thereafter, the trial court entered an adjudication and disposition order, reiterating its dependency-neglect finding and stating,

> [T]he Court finds that the parents subjected the juvenile to aggravated circumstances in that the juvenile was subjected to extreme cruelty and was neglected or abused such that the abuse or neglect could endanger the life of the child. The Court further finds that the father's testimony was not credible.

3

Additionally, the trial court found that the goal of the case was reunification, and it approved the DHS case plan. It is from this order that appellants appeal.

In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Churchill v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 530, at 9, 423 S.W.3d 637, 641. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*, 423 S.W.3d at 641. In reviewing a dependency-neglect adjudication, we defer to the trial court's superior position to observe the parties and judge the credibility of the witnesses. *Parker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 18, at 14, 380 S.W.3d 471, 478. Deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Culclager-Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 518, at 2.

A dependent-neglected juvenile includes one who is at substantial risk of serious harm because of abuse, neglect, or parental unfitness to the juvenile or to a sibling. Ark. Code Ann. § 9-27-303(18)(A) (Supp. 2013). Here, the appellants do not challenge the dependency-neglect finding made by the trial court. Instead, they contend that insufficient evidence supports the trial court's finding of aggravated circumstances based on extreme cruelty.

DHS argues we need not reach the merits of the appellants' appeal and must affirm based on our holding in *Payne v. Arkansas Department of Human Services*, 2012 Ark. App. 500. In

*Payne*, the appellant conceded the dependency-neglect adjudication but sought a "partial reversal" of the adjudication order, arguing that the trial court's "finding of aggravated circumstances and disposition of immediate termination" was clearly erroneous. *Payne*, 2012 Ark. App. 500, at 1. We disagreed and affirmed, noting that the trial court made no aggravated-circumstances finding; pointing out that the appellant conceded the adjudication finding of dependency-neglect; and holding that the appellant did not separately appeal the disposition of the case.[2] *Id.* at 2–3.

The facts of the instant case are distinguishable from *Payne*. Here, the trial court made a finding of aggravated circumstances—which was not made in *Payne*. The aggravated-circumstances finding was a separate finding made in addition to the dependency-neglect finding—it was not a disposition. The disposition of the case, as set forth in the trial court's order, was reunification, and the trial court's order directed that the case plan be followed to that prospective end. There is no indication on this record that the appellants are seeking to appeal this disposition.[3] Therefore, the holding in *Payne* is inapplicable to the instant case. We hold that appellants' challenge to the aggravated-circumstances finding is part of the adjudication decision and is properly before our court. *See Cole v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 395.

---

[2]In *Payne*, the appellant checked the box labeled "adjudication," not "disposition," on her pre-printed notice of appeal. *Payne*, 2012 Ark. App. 500, at 2 n. 1.

[3]Appellants' notices of appeal reflect that only the adjudication, not the disposition, is being appealed.

5

On the merits of appellants' appeal, we hold that the trial court's finding of aggravated circumstances because of extreme cruelty was not clearly against the preponderance of the evidence. Arkansas Code Annotated section 9-27-303(6)(A) (Repl. 2013) defines "aggravated circumstances" as occurring when a child has been abandoned, chronically abused, subjected to extreme or repeated cruelty. The evidence in this case supports the trial court's finding that ED was subjected to aggravated circumstances in the form of extreme cruelty.

There was testimony that Callison suffered from significant, untreated mental-health conditions and had been acting erratically in the weeks leading up to the incident, that Davidson was aware of Callison's condition and her erratic behavior, and that he acknowledged that ED was not safe in Callison's care. There was also evidence that Callison placed her harmful medications within the reach of ED and that Davidson was aware of this as well. Despite his concerns for ED's safety, the testimony showed that he left ED in the care and custody of Callison. While in Callison's care ED experienced what Dr. Farst described as a life-threatening incident that could have resulted in permanent brain damage or death. ED's lab testing revealed tramadol and methadone in her system. Finally, appellants offered no plausible explanation for ED's condition.

We acknowledge Davidson's testimony at the adjudication hearing that on January 9 Callison's mental-health condition had improved and that he had no concerns about leaving ED in Callison's care. However, the trial court specifically found that Davidson's testimony was not credible, and we defer to the trial court's superior position to observe the parties and judge the credibility of the witnesses. *Parker*, 2011 Ark. App. 18, at 14, 380 S.W.3d at 478.

Accordingly, we hold that the trial court's finding of aggravated circumstances based on extreme cruelty was not clearly erroneous and affirm the trial court's adjudication and disposition order.

Affirmed.

GLOVER and WOOD, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor child.