
# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-16-92

WANDA STARLA LITTLE
                    APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES; JENNIFER ANDERSON
AND TROY ANDERSON, ET AL.
                    APPELLEES

**Opinion Delivered:** August 31, 2016

APPEAL FROM THE SEBASTIAN
COUNTY CIRCUIT COURT,
FORT SMITH DISTRICT
[NO. JV-2010-315]

HONORABLE LEIGH T. ZUERKER,
JUDGE

AFFIRMED

## RAYMOND R. ABRAMSON, Judge

Wanda Little appeals from the October 12, 2015 Sebastian County Circuit Court order granting guardianship of her daughter K.L. to Troy and Jennifer (Jenny) Anderson.[1] On appeal, Little argues that substantial evidence does not support the circuit court's findings,[2] and that its decision is clearly erroneous and is not in the best interest of the child, K.L. For the following reasons, we affirm.

It is undisputed that K.L. has endured a tremendous amount in her short life. On April 21, 2010, less than a week before K.L. turned six years old, she was removed from her

---

[1] Jenny Anderson is a maternal second cousin of K.L.

[2] This court reviews guardianship proceedings de novo on the record, but we will not reverse the decision of the circuit court unless it is clearly erroneous. *Witham v. Beck*, 2013 Ark. App. 351, 428 S.W.3d 537. Therefore, substantial evidence is not the correct standard of review here.

mother's care and placed in foster care due to Little's drug use and educational neglect.[3] On December 19, 2011, K.L. was placed in the custody of her paternal grandparents, Doug and Belinda Little.[4] In the same order, the court awarded Wanda Little visitation to be supervised by the custodial grandparents or by Jenny Anderson. From December 2011 through August 7, 2014, K.L. remained in the permanent custody of her paternal grandparents until Arkansas Department of Human Services (DHS) filed a petition for emergency custody based on allegations of sexual abuse by Doug Little. An ex parte order for emergency custody with DHS was entered that day.

On December 2, 2014, Troy and Jenny Anderson, as the relative foster parents of K.L., petitioned the court for her "permanent guardianship."[5] Wanda Little answered on December 12, 2014 and contested that the petition should be denied. On December 31, 2014, the court suspended Wanda Little's visitation, and a review hearing was held on March 10, 2015. Following the hearing, the previous temporary order suspending visitation was extended, and reunification with the mother was the stated goal. K.L. remained in the custody of the Andersons. On July 14, 2015, a permanency-planning hearing was held, and Wanda Little's visitation with K.L. continued to be suspended; K.L. remained in the custody of the Andersons. On October 2, 2015, a hearing on the petition for permanent

---

[3] Testimony presented showed that K.L. and Little had both been held at gunpoint by one of Little's boyfriends, who subsequently shot and killed himself in the home. K.L. was often absent from school, and when she did attend, she came to school hungry and unclean.

[4] K.L.'s biological father, Kirkland Little, is deceased.

[5] We note that there is no statutory provision for "permanent guardianship," but it is clear that the lower court treated it as a petition for guardianship.

guardianship was conducted, and the court granted the permanent guardianship in an order filed on October 12, 2015. This timely appeal follows.

In juvenile proceedings, the standard of review on appeal is de novo, although we do not reverse unless the trial court's findings are clearly erroneous. *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, 449 S.W.3d 283. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* This court gives due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Mosher v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 111, 455 S.W.3d 367. This deference to the trial court is even greater in cases involving children, as a heavier burden is placed on the trial judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Callison v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 592, 446 S.W.3d 210. Our appellate courts have made clear that there is no other type of case where the superior position, ability, and opportunity of the trial judge to observe the parties carries a greater weight than one involving the custody of a child. *Id.*

In the instant case, K.L. falls under the definition of an incapacitated person because she is under the age of majority. Ark. Code Ann. § 28-65-104(1) (Repl. 2012). The purpose of a guardianship over an incapacitated person is set forth in Arkansas Code Annotated section 28-65-105. Guardianship is to be used "only as is necessary to promote and protect the well-being of the person and his or her property." Ark. Code Ann. § 28-65-105(1). Arkansas Code Annotated section 28-65-210 provides what must be proved to the trial

court in order to appoint a guardian: (1) the person is a minor or is otherwise incapacitated, (2) a guardianship is desirable to protect the interests of the incapacitated person, and (3) the person to be appointed guardian is qualified and suitable to act as such.

There is a statutory preference to be given to the parent, "if qualified and, in the opinion of the court, suitable" to be appointed guardian, as set out in Arkansas Code Annotated section 28-65-204(a). This natural-parent preference does not automatically attach to a child's natural parents; it is within the circuit court's discretion to make a determination as to whether a parent is "qualified" and "suitable" under section 28-65-204(a). *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413.

Moreover, when the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. A determination of parental fitness is not necessary in guardianship proceedings as between a natural parent and a third party; the best interest of the child is paramount. *Id.* To the extent that any prior cases suggested a standard of fitness or unfitness in guardianship proceedings involving the statutory natural-parent preference, those cases were overruled in *Fletcher.* The natural-parent preference is but one factor that the circuit court must consider in determining who will be the most suitable guardian for the child. *Id.* Any inclination to appoint a parent or relative must be subservient to the principle that the child's best interest is of paramount consideration. *Id.*

With these statutes and standards in mind, we now turn to the evidence before the court and consider Little's arguments challenging the trial court's decision. Throughout the course of this case, dating back to the time K.L. was initially removed from the custody of Little in 2010, Little failed to achieve reunification with K.L. She took little action to

establish or reestablish her fitness to parent K.L. After Doug Little's sexual abuse of K.L. over a two-year period was discovered, the circuit court found K.L. dependent-neglected for a second time. K.L. was ordered to remain in DHS's custody, and reunification with Wanda was made the case goal.[6] While visits occurred between K.L. and Wanda, they were characterized by conflict, anger, animosity and resentment. K.L.'s therapist testified that the visits and confrontation with Wanda created anxiety and stress for K.L.

The uncontroverted testimony of Jenny and Troy Anderson at trial shows that they had been active in K.L.'s life since birth—attending family functions and babysitting her for days at a time. When K.L. began school, Wanda Little listed Jenny Anderson as one of the persons authorized to pick up K.L. from school. After K.L. was placed in DHS's custody the first time, the Andersons continued to have holiday and weekend visits with her. Their visits continued even after K.L. was placed in Doug and Belinda Little's custody. After K.L. was removed from her grandparents' custody, she was placed with the Andersons as a temporary foster placement, and then the Andersons were granted temporary custody by the court.

The evidence before the circuit court showed a long-standing, positive relationship between K.L. and the Andersons. The Andersons have spent quality time with K.L. for years, and testimony indicated that a strong bond existed between them. The circuit court's best-interest finding is not clearly erroneous. The three statutory requirements for guardianship as set forth in Arkansas Code Annotated section 28-65-210 have also been met

---

[6] The parties stipulated that K.L. had been subjected to sexual abuse and was thus dependent-neglected. Further, Wanda testified that her late husband, K.L.'s father, Kirkland Little, had told her that his parents had attempted to sexually abuse him as a teen.

in this case.

As noted above, we give great deference to the circuit court in cases that involve child custody. *Callison, supra.* Having reviewed the evidence in this case, the circuit court specifically focused on what it considered to be the best interest of K.L., and we affirm the circuit court's finding that it was in her best interest for the Andersons to be appointed guardians. We hold that the trial court applied Arkansas case law and statutes correctly in this instance, and we affirm its decision as not clearly erroneous.

Affirmed.

VIRDEN and GRUBER, JJ., agree.

*Michael Hamby, P.A.*, by: *Michael Hamby*, for appellant.

*Robertson, Beasley & Shipley, PLLC*, by: *Robert Kelly*, for appellees Troy Anderson and Jenny Anderson.

*Jerald A. Sharum*, County Legal Operations, for appellee DHS.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.