

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-333

PHILLIP HAMBRICK

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILDREN

APPELLEES

Opinion Delivered: October 5, 2016

APPEAL FROM THE WHITE
COUNTY CIRCUIT COURT
[NO. 73JV-15-223]

HONORABLE ROBERT
EDWARDS, JUDGE

AFFIRMED

## BART F. VIRDEN, Judge

Appellant Phillip Hambrick appeals from the White County Circuit Court's adjudication of his three daughters as dependent-neglected as a result of their father's sexual abuse of A.H. (DOB: 8-21-2012). Hambrick argues that the trial court erred (1) in determining that A.H.'s hearsay statements presented reasonable guarantees of trustworthiness, and (2) in finding that A.H. had been sexually abused. Hambrick also asserts that deference to the trial court is inappropriate under these circumstances. We affirm.

I.  *Procedural History*

On October 26, 2015, the Arkansas Department of Human Services (DHS) filed a petition for an ex parte emergency order alleging that A.H., G.H. (DOB: 1-27-2010), and R.H. (DOB: 5-11-2015) were dependent-neglected and at substantial risk of serious harm due to sexual abuse and parental unfitness. Attached to the petition was the affidavit of Darby Miller, a DHS family service worker, stating that the Arkansas State Police was

investigating a report of sexual abuse against Hambrick involving A.H. Miller attested that A.H. had disclosed in a forensic interview that Hambrick had touched her vaginal area with his penis and mouth and that he had put his penis in her mouth. Miller further attested that A.H.'s older sister, G.H., had disclosed that someone had touched her vaginal area but would not identify the perpetrator.

The trial court granted DHS's petition and ordered Hambrick to have no contact with his children. The children were permitted to remain in the custody of their mother. Subsequently, the trial court entered an order finding that there was probable cause to continue the restraining order and scheduled an adjudication hearing.

## II.    *Adjudication Hearing*

Prior to the adjudication hearing, the trial court noted that the parties had stipulated that, for purposes of Rule 804 of the Arkansas Rules of Evidence, the children were unavailable to testify. Before ruling on whether to admit and consider hearsay statements, the trial court viewed a video of the children's forensic interviews and heard testimony.

Kathy Helpenstill, a forensic interviewer with the Searcy Children's Safety Center, testified that she interviewed both G.H. and A.H. separately and had been provided with some background information about the allegations prior to the interviews. Helpenstill testified that she had been told that A.H. had been acting out sexually during naptime at daycare by putting toys and blocks in her underwear. She said that A.H.'s actions were "not typical at all of age appropriate behavior." Helpenstill was also told that G.H. had made "an outcry" the previous year at the same daycare by acting out sexually. Both children referred to their vaginal areas as their "boo-boos."

G.H. was five years old at the time of the interview. The following exchange occurred between Helpenstill and G.H.:

Q:      . . . Tell me about your boo-boo.

A:      I don't want anyone touching it because I don't want to tell you.

. . .

Q:      What happens when somebody touches your boo-boo?

A:      I don't want to tell you.

. . .

Q:      . . . What will happen if you tell me?

A:      I'm scared.

Q:      What are you—tell me about being scared. What will happen if you tell?

A:      I don't know.

Q:      You don't know? Well, this is a safe place and you can say anything you want to here. Okay? And so, did you get a touch one time? Okay. And did it happen one time or more than one time?

A:      More than one time.

When asked what had touched her "boo-boo," whether more than one person had touched it, and whether the touching had involved an adult or another child, G.H. said that she did not want to talk about it. G.H. described Hambrick as a "safe" person whom she could tell if something bad happened to her, and she denied that he had done anything to make her sad or upset.

In her interview, then three-year-old A.H. said that she liked to touch her "boo-boo." In pertinent part, A.H. said the following during her interview:

Q:     . . . Did Daddy touch your boo-boo one time or more than one time?

A:     More than one time.

Q:     What was Daddy doing when he touched your boo-boo?

A:     Hey, this is—he just opened my mouth and he put a rock inside.

. . .

Q:     . . . When Daddy touched your boo-boo, what did he have on? What was he—what kind of clothes did he have on?

A:     Naked.

Q:     Daddy was naked?

A:     Just like me.

. . .

Q:     Is—is the rock on part of Daddy's body? Come show me where a rock is.

A:     In his boo-boo.

Q:     Is that Daddy's boo-boo? Okay. Where did Daddy put his boo-boo? In his mouth.

A:     My mouth.

. . .

Q:     Okay. Let me ask you this. I want to make sure I get this right. Daddy put his boo-boo where? On your mouth?

A:     In my mouth.

Q:     Did Daddy put his boo-boo anywhere else?

A:     Yes.

A.H. told Helpenstill that if someone did something that made her sad or scared, she could tell "Daddy." Yet, when asked whether she considered her father to be a "safe"

person, A.H. responded that he was not and claimed that her father was a bad person because he had hit and beaten people.

Helpenstill continued with her testimony after the interviews had been played for the court. Helpenstill stated that it was "absolutely typical" for children to be reluctant to talk about this type of issue with her. Helpenstill further testified that A.H.'s interview was "age appropriate" for a three-year-old child. She stated that it was not unusual for A.H. to have given inconsistent statements and that, in fact, it was expected. Helpenstill said that she thought A.H. had given "quite a few credible statements." Helpenstill was asked on cross-examination whether she had led A.H. by asking a question beginning with, "So when Daddy touches your boo-boo . . .." Helpenstill explained that, when A.H. said that her father had touched her, she had made a gesture of grabbing and swatting her "boo-boo." On redirect, Helpenstill testified that it was not unusual for children to name their father as a safe person because "[c]hildren get spanked by their parents all the time and they still love and feel safe with their parents, but—so, it's that—the fact that something could have happened and they still feel safe, that's possible."

Kalika Rogers, an investigator with the Crimes Against Children Division (CACD) of the Arkansas State Police, testified that she began an investigation into allegations regarding the Hambrick children on October 22, 2015. Rogers stated that there were true findings of sexual contact and oral sex against Hambrick and that Hambrick had appealed that finding. Rogers conceded that A.H. had been "all over the place" in her interview but that she still considered A.H.'s disclosure consistent and credible.

Velma Fobbs, a preschool teacher at the Bald Knob Early Childhood Center, testified that she was familiar with both G.H. and A.H. She said that A.H. was her student that year and that G.H. had been a student the previous year in a classroom across the hall. According to Fobbs, several weeks after A.H. had started daycare, she observed A.H. touching herself between her legs and moaning and groaning during naptime. Fobbs said that A.H. had engaged in this activity every day and that it had progressed to pulling her panties down and touching herself. Fobbs said that one day A.H. had gotten a long wooden cylinder from the block section and that A.H. had then lain on her mat sucking the cylinder while she had her hand in her panties touching her private area. Fobbs said that A.H. told her that her father had touched her private part, which A.H. had called her "boo-boo," and that A.H. had opened a doll's legs and said that her father had touched her there and had given her candy. Fobbs testified that she had seen G.H. exhibiting the same behavior. Fobbs said that she informed A.H.'s mother that A.H. had accidents at naptime and would "wake up holding herself saying, '[N]o, no, stop, it hurts.'" Fobbs said that A.H.'s mother told her that A.H. had been having nightmares and urinating on herself.

April Guzman, a therapist at Families, Inc., testified that she saw G.H. and A.H. for an initial assessment on November 13, 2015. According to Guzman, G.H. said that her father had "touched 'Sissy' in a very bad way" and that A.H. had confided to her that their father had touched her (A.H.) in their room at night.

Julie Lane, who performs sexual-assault medical exams on children, testified that A.H. had an anal tear but that, while it could have been caused by sexual abuse, it could

also have resulted from some type of trauma. Lane said that having no objective medical findings of sexual abuse is "not unusual."

Hambrick testified that he was a licensed teacher and administrator and served on the city council in Judsonia. He denied all sexual-abuse claims and said that A.H. was "given to tall tales." He raised the possibility that G.H. had been touched by a boy who lived in their neighborhood.

Amanda Hambrick, the children's mother, testified that she was made aware of the children's touching themselves at school in October 2015. Amanda testified that Hambrick would put the girls in bed at night while she fed the baby. She said that the children had not disclosed anything to her before the hotline report but that they had since that time.

The trial court found that the forensic interviews were "credible and compelling" and that the video of A.H.'s interview "demonstrates a three year old's attempt to tell that she was sexually abused and was conducted without leading the child." The trial court found that Fobbs's testimony was credible, that her testimony tended to corroborate the statements in those interviews, and that what was said in the interviews was consistent with Fobbs's testimony of what A.H. had told her. The trial court adjudicated Hambrick's children dependent-neglected based on his sexual abuse of A.H. The trial court mentioned the CACD's true finding of sexual abuse and Lane's testimony regarding an anal tear.

III.    *Discussion*

A.    Standard of Review

Adjudication hearings are held to determine whether the allegations in a dependency-neglect petition are sustained by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A) (Repl. 2015). The petitioner bears the burden of proof by a preponderance of the evidence in dependency-neglect cases. Ark. Code Ann. § 9-27-325(h)(2)(B). The standard of review on appeal is de novo, but we do not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Callison v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 592, 446 S.W.3d 210. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Wells v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 176. In determining whether a finding is clearly erroneous, the appellate court gives a high degree of deference to the superior position of the trial court to judge the credibility of the witnesses. *Id.*

In the argument section of his brief, Hambrick acknowledges this standard of review but asserts that deference to the trial court is not appropriate here. According to Hambrick, because the victim did not testify, the circuit court saw a video of the forensic interview and was in no better position than this court to render a credibility determination.

Hambrick stipulated that the children were unavailable to testify. He cites no authority for his position that credibility determinations may be made only where live testimony is offered.[1] *Ward v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 491 (refusing to

---

[1]*Cf. Stiger v. State Line Tire Serv.*, 72 Ark. App. 250, 35 S.W.3d 335 (2000) (rejecting claimant's argument in workers' compensation case that permitting the Commission to make credibility determinations, regardless of whether the Commission had personally taken live testimony, violated his due-process rights).



consider arguments without convincing argument or citation to authority where it is not apparent without further research that the arguments are well taken). We decline to carve out an exception to our well-settled standard of review.

### B.    Child Hearsay

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Hearsay testimony is generally inadmissible pursuant to Arkansas Rule of Evidence 802; however, it is admissible if the declarant is unavailable and the statement is made by a child under the age of ten concerning any type of sexual offense against the child. Ark. R. Evid. 804(b)(6). The trial court must conduct a hearing to determine whether the statement offered possesses a reasonable guarantee of trustworthiness. Ark. R. Evid. 804(b)(6)(A). In deciding whether the statement is sufficiently trustworthy, the trial court may employ any factor it deems appropriate including, but not limited to, the following:

1.  The spontaneity of the statement.

2.  The lack of time to fabricate.

3.  The consistency and repetition of the statement and whether the child has recanted the statement.

4.  The mental state of the child.

5.  The competency of the child to testify.

6.  The child's use of terminology unexpected of a child of similar age.

7.  The lack of a motive by the child to fabricate the statement.

8.  The lack of bias by the child.

9.  Whether it is an embarrassing event the child would not normally relate.

10. The credibility of the person testifying to the statement.

11. Suggestiveness created by leading questions.

12. Whether an adult with custody or control of the child may bear a grudge against the accused offender, and may attempt to coach the child into making false charges.

13. Corroboration of the statement by other evidence.

14. Corroboration of the alleged offense by other evidence.

Ark. R. Evid. 804(b)(6)(A).

Hambrick argues that the trial court erred in finding that the hearsay statements of A.H. presented reasonable guarantees of trustworthiness because they were "ambiguous accusations extracted from a three year old as a result of repeated leading questions." He contends that the red flags showing A.H.'s misunderstanding and lack of comprehension were simply ignored. Hambrick urges that the questioning by the interviewer assumed abuse and that no effort was made to clarify the child's answers.

Matters pertaining to the admissibility of evidence are left to the sound discretion of the trial court, and we will not reverse such a ruling absent an abuse of that discretion. *Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149. Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.* Furthermore, we will not reverse absent a showing of prejudice, as prejudice is not presumed. *Id.*

In finding the hearsay statements sufficiently trustworthy, the trial court clearly considered the relevant factors, including the credibility of Fobbs in testifying to A.H.'s

statements, the consistency of the statements, and the corroboration of the statements by other evidence. While we may agree that A.H.'s statements were at times contradictory and confusing, Helpenstill testified that this was normal for a three-year-old child and did not mean that A.H. had not been abused. Also, we note that there were several instances where A.H. corrected Helpenstill when she did not appear to have understood what the child had said. We cannot say that the trial court abused its discretion in finding the hearsay statements sufficiently trustworthy.

## C.    Sufficiency

A dependent-neglected juvenile means any juvenile who is at substantial risk of serious harm as a result of, among other things, sexual abuse to the juvenile, a sibling, or another juvenile. Ark. Code Ann. § 9-27-303(18)(A)(iii). "Sexual abuse" includes deviant sexual activity and sexual contact by a caretaker to a person younger than eighteen years of age. Ark. Code Ann. § 9-27-303(52)(D)(i). The term "caretaker" includes a parent. Ark. Code Ann. § 9-27-303(8). "Deviant sexual activity" means any act of sexual gratification involving penetration, however slight, of the anus or mouth of one person by the penis of another person. Ark. Code Ann. § 9-27-303(21)(A). "Sexual contact" is defined as any act of sexual gratification involving touching, directly or through clothing, of the sex organs, buttocks, or anus of a juvenile, or the breast of a female juvenile or encouraging the juvenile to touch the offender in a sexual manner. Ark. Code Ann. § 9-27-303(53)(A)(i), (ii).

Hambrick contends that there was nothing "compelling" about A.H.'s interview and that the alleged corroboration was equally weak. He maintains that the other witnesses' testimony "was collateral and, viewed in the proper context, did not provide the requisite

substantiation of the allegations." He states that, although Fobbs testified that A.H. told her that he had touched her private area, A.H. had said that her mother and G.H. had touched her as well. Hambrick asserts that Rogers's testimony that the report was found to be true and that he had appealed that finding was irrelevant and meaningless. Also, he complains that, while the trial court relied on Lane's testimony about an anal tear, the trial court failed to mention that it could have resulted from natural causes and that there was no physical evidence of abuse.

Hambrick is essentially asking this court to act as a super fact-finder; however, this court will not substitute its own judgment or second-guess the credibility determinations made by the trial court. *Bowie v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 279, 427 S.W.3d 728. The trial court heard all of the perceived weaknesses in the witnesses' testimony but was entitled to make credibility determinations to which this court defers. *Wells*, *supra*. In adjudicating the children dependent-neglected, the trial court considered A.H.'s statements, which were found to be sufficiently trustworthy, and credible testimony from witnesses. We are not left with a definite and firm conviction that a mistake was made here. We cannot say that the trial court's adjudication was clearly erroneous or clearly against the preponderance of the evidence.

Affirmed.

GLADWIN, C.J., and GLOVER, J., agree.

*Jeff Rosenzweig*, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.

