Cite as 2024 Ark. App. 273

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-730

| | |
|---|---|
| RAYESHA BOYKINS<br><br>                          APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br><br>                          APPELLEES | Opinion Delivered April 24, 2024<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT, EIGHTH<br>DIVISION<br>[NO. 60JV-22-120]<br><br><br>HONORABLE TJUANA BYRD<br>MANNING, JUDGE<br><br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Rayesha Boykins ("Boykins") appeals the circuit court's order granting guardianship of two of her children to Michele Pegram ("Pegram"). Boykins argues on appeal (1) that the Arkansas Department of Human Services ("DHS") failed to present sufficient evidence that guardianship with Pegram should prevail over her natural-parent preference of the maternal uncle and his wife and (2) that DHS failed to present sufficient evidence that guardianship with Pegram was in the children's best interest. We affirm.

I. *Background Facts*

On March 2, 2022, DHS exercised emergency custody of Boykins's three children, MC1, MC2, and MC3, following Boykins's arrest due to an altercation with her boyfriend

while intoxicated. Once taken into custody, the juveniles were placed with Pegram, MC3's paternal grandmother.

DHS filed a petition for emergency custody of the juveniles on March 4 wherein it asserted that the children were dependent-neglected due to Boykins's continued abuse of alcohol, leaving her unable to care for her children. The circuit court entered the order granting the petition on the same day. On March 10, the court held a probable-cause hearing and found that probable cause did exist for the emergency order to remain in place.

On April 19, 2022, the circuit court held an adjudication hearing and found the juveniles dependent-neglected. Moreover, it found the facts in the petition to be true and correct and that the juveniles had all tested positive for illegal drugs. The goal of the case was set as reunification.

On July 28, 2022, the circuit court held a review hearing and continued the goal of reunification. Additionally, the court found Boykins and MC3's father, Chris Pegram ("Chris"), in compliance with the case plan, and it ordered that they both be allowed unsupervised visitation. A permanency-planning hearing was held on January 5, 2023, and the court continued the goal of reunification. Additionally, the court found the juveniles were doing well in their placement with Pegram.

On April 11, 2023, the circuit court held a fifteen-month review hearing. At this hearing, the court found that Chris was fit for custody and ordered that MC3 be placed in his custody and MC3's portion of the case be closed. Regarding MC1 and MC2, the circuit court changed the goal of the case to guardianship due to Boykins's lack of stability with

2

housing and employment. Further, the court found that Pegram was willing to be MC1 and MC2's guardian.

On June 30, 2023, DHS filed a petition to appoint Pegram as MC1 and MC2's guardian. No other petitions for guardianship were filed in this matter. The guardianship hearing took place on July 25. Pegram testified that she desired to be MC1 and MC2's guardian and that she understood the duties of being their guardian. Regarding her relationship with Boykins, Pegram testified that they were not "friends or anything, but I'm okay with Ms. Boykins."

The DHS caseworker, Devon Sears, testified that he had not been able to make contact with Boykins since the last hearing; that he did not know where Boykins was living; that Boykins had not been visiting the children; and that he believed a guardianship was in the children's best interest because they need permanency. Sears further testified that the children had known Pegram most of their lives, "so the relationship is significant," and that continued placement with Pegram would allow the children to stay in their same schools, continue in the same therapy, and remain close to their brother, MC3.

On cross-examination, Sears explained that MC1 and MC2 were having visits with some relatives "that are now foster family support," which included their maternal uncle and aunt. Sears further detailed that early in the case, relatives were assessed as options for placement, including the children's maternal uncle and aunt. However, Sears testified that they did not pass background checks or drug screens. As the case progressed, DHS began the process of vetting the uncle and his wife as an open foster home; the relatives were

3

subsequently approved as "foster family support" with the ability to keep the children for up to seventy-two hours. Sears stated that the maternal uncle and his wife expressed their interest in being MC1 and MC2's guardians but that Boykins never made that request. At the time of the guardianship hearing, it was the DHS' position that Pegram was a fit guardian with a significant relationship with the children who could provide immediate stability.

The ad litem then called MC1 and MC2 as witnesses. Both children expressed their desire to remain with Pegram. Boykins was the final witness at the hearing. She testified that she was living with her aunt and was currently on a waiting list for housing. Further, Boykins stated that she would agree to a guardianship if the guardians were her brother, Jamal Withworth, and his wife. She also acknowledged that she had not seen MC1 or MC2 in person for close to a year but that she speaks to them every morning, and they Facetime every day. She said she had not seen the children in person because she was uncomfortable visiting Pegram's house. Boykins further stated that she was concerned Pegram might try to prevent the children from seeing her; however, she did not testify as to any incidents in which Pegram had prevented her from seeing the children.

At the conclusion of the hearing, the circuit court granted the guardianship petition appointing Pegram as guardian. The court found that guardianship was in the children's best interest and reiterated their need for permanency. With regard to Boykins's request for her brother and his wife to be appointed as guardians, the court held as follows:

> The Court certainly gives validity and credibility to Ms. Boykins' opinion about her girls being placed with [Boykins's] brother and sister in law, and I'm not ignoring that. But based on [Boykins's] testimony, those folks have been aware of or somehow

4

involved in the case since the beginning. And so it's very late in the game to propose this. I'm not certain why that request is just being made today. I understand [Boykins] testified that she – she felt that she was unable to make contact with the Department, but she—you also were appointed an attorney who could advocate on your behalf, who this Court finds that there's no evidence before me that—that the effort was made to get him to propose this before today. The Court finds that Mr. Sears' testimony was credible, as was Ms. Pegram's, and the girls. The Court finds that it is in [the children's] best interest that the guardianship petition be granted.

On August 25, 2023, the court entered the guardianship order naming Pegram as MC1 and MC2's guardian. Attached to the order was a visitation schedule that set out liberal visitation between the children and Boykins as well as other family members. Boykins filed a timely notice of appeal; this appeal followed.

II. *Standard of Review*

In juvenile proceedings, the standard of review on appeal is de novo, although we do not reverse unless the circuit court's findings are clearly erroneous. *Ingle v. Ark. Dep't of Hum. Servs.*, 2014 Ark. 471, 449 S.W.3d 283. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* This court gives due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Mosher v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 111, 455 S.W.3d 367.

III. *Points on Appeal*

Boykins argues on appeal that (1) DHS failed to present sufficient evidence that guardianship with Pegram should prevail over her natural-parent and relative preference of

5

guardianship with the maternal uncle and his wife, and (2) DHS failed to present sufficient evidence that guardianship with Pegram was in the children's overall best interest.

IV. *Discussion*

Our appellate courts review guardianship proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Martin v. Decker*, 96 Ark. App. 45, 237 S.W.3d 502 (2006). When reviewing the proceedings, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *Spurling v. Est. of Reed*, 2018 Ark. App. 185, 544 S.W.3d 119. This deference to the circuit court is even greater in cases involving children because a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Callison v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 592, 446 S.W.3d 210. Our appellate courts have made clear that there is no other type of case in which the superior position, ability, and opportunity of the circuit court to observe the parties carries a greater weight than one involving the custody of a child. *Id.*

Arkansas Code Annotated section 28-65-204(b) (Repl. 2012) provides that the circuit court shall appoint as guardian of an incapacitated person the one most suitable who is willing to serve, having due regard to:

(1) Any request contained in a will or other written instrument executed by the parent or by the legal custodian of a minor child for the appointment of a person as guardian of the minor child;

(2) Any request for the appointment of a person as his or her guardian made by a minor fourteen (14) years of age or over;

6

(3) Any request for the appointment of a person made by the spouse of an incapacitated person;

(4) The relationship by blood or marriage to the person for whom guardianship is sought.

When the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413.

Boykins argues that the maternal uncle and his wife should have had preferential consideration pursuant to the natural-parent and relative preferences within the law. Specifically, she contends that the circuit court failed to sufficiently consider those preferences, and the order of guardianship must be reversed. In response, DHS contends that section 28-65-204(b) is not a list of preferences but instead enumerates certain factors for the circuit court to consider when deciding on a guardian. We agree.

Our supreme court has held that any inclination to appoint a parent or relative must be subservient to the principle that the child's interest is of paramount consideration. *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000). Furthermore, Arkansas Code Annotated section 28-65-204(b) does not designate preferences but instead requires the circuit court to give "due regard" to certain factors. Here, the circuit court specifically stated that it gave validity to Boykins's opinion on who should be appointed as guardian for MC1 and MC2, but that permanency was of utmost importance.

Moreover, Boykins cites to no law that requires the circuit court to give a detailed analysis of why it was declining to give preference to her choice of guardian. Nor do we find merit in Boykins's argument that the circuit court focused solely on the untimeliness of her

7

request of preferred guardian. The record does not support this argument. While the circuit court conveyed that it was troubled that Boykins's preference of guardian was being relayed to the court at the guardianship hearing, Boykins's attempt to characterize the court's ruling as purely procedural in nature is unpersuasive. The court's ruling focused on stability for MC1 and MC2 and the fact that both had been living with Pegram for over a year. Most importantly, no other guardianship petitions had been filed by relatives of the children. Therefore, Boykins was essentially requesting that the court delay permanency for the children in hopes that their maternal uncle and his wife would file a guardianship petition sometime in the future.

In considering the best interest of the children, the court was certainly allowed to consider how long MC1 and MC2 had been in foster care and how much longer another potential guardianship would take to complete. Accordingly, we cannot say that the circuit court erred by appointing Pegram as MC1 and MC2's guardian. We also note that Boykins's argument regarding relative preference was not preserved—the court made no ruling regarding blood relatives of the children, and Boykins made no request for specific findings of fact from the circuit court. *See Crawford v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 474, 588 S.W.3d 383.

Next, Boykins argues that DHS failed to present sufficient evidence that guardianship with Pegram was in the children's overall best interest. Specifically, Boykins contends the record demonstrates that she accepted responsibility for causing her children to enter foster care and has diligently worked to address her issues, including those with drugs and alcohol.

Further, Boykins maintains that she is uncomfortable visiting her children in Pegram's home and that her relationship with her children is suffering due to their placement with Pegram. Accordingly, Boykins contends that the circuit court failed to consider the impact of her difficult relationship with Pegram.

Boykins's second point on appeal is simply a request for this court to reweigh the evidence; however, it is well settled that our court will not do so, and credibility determinations are left to the circuit court. *See Glover v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 278, 577 S.W.3d 13. The circuit court found the testimony of Pegram and both MC1 and MC2 to be credible and made the appropriate considerations in making its finding, which was to promote permanency and stability for the children. Furthermore, the evidence supports the circuit court's finding. Both children have a significant relationship with Pegram; both expressed a desire to remain in the placement of Pegram; the children testified that they felt safe in Pegram's home; Pegram was found to be an appropriate guardian; and guardianship with Pegram would allow both children to remain at their current schools and to continue to participate in their current therapies. Thus, we find no error.

V. *Conclusion*

For the above-stated reasons, we affirm the circuit court's order appointing Pegram as guardian of MC1 and MC2.

Affirmed.

KLAPPENBACH and GRUBER, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

9

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.